GEORGE WEBB

VERSUS

LINCOLN PARISH
SHERIFFS OFFICE, ET AL.

CIVIL ACTION NO. 17-1605

JUDGE ELIZABETH ERNY FOOTE

MAGISTRATE JUDGE HAYES

## MEMORANDUM RULING

Plaintiff George Webb ("Webb") brings this action under 42 U.S.C. § 1983 and Louisiana state law seeking damages and a permanent injunction ordering reinstatement as redress for his alleged unconstitutional firing from the Lincoln Parish Sheriff's Office ("LPSO"). [Record Document 1]. Defendant Lincoln Parish Sheriff Mike Stone ("Stone"), individually and in his official capacity, filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). [Record Document 20]. Plaintiff has filed a motion to strike Defendant's summary judgment evidence pursuant to Federal Rule of Civil Procedure 56(c). [Record Document 25]. The parties have filed briefing on both motions. [Record Documents 20-1, 25-1, 24, 26, and 27]. The motions are related, and the Court will rule on both simultaneously. For the reasons discussed below, Plaintiff's motion to strike Defendant's summary judgment evidence [Record Document 25] is **DENIED.** Defendant's motion for summary judgment [Record Document 20] is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case stems from Webb's termination from the LPSO in August of 2017. [Record Document 1]. It is undisputed that, at some point in 2017, rumors spread around the LPSO

that Stone may not run for reelection as the sheriff in 2019. [Record Documents 20-3 at 22-23, 20-4 at 6-8]. It is also undisputed that by March of 2017, Stone knew that Stephen Williams ("Williams"), Webb's supervisor, intended to run to replace Stone if he chose not to seek reelection. [Record Document 20-4 at 7, 24-6 at 12]. The parties dispute at least the opposing party's characterization of nearly every other fact. [Record Document 24-2].

According to Stone, by March of 2017 he was aware that Webb also intended to run to replace him as sheriff should Stone choose not to seek reelection. [Record Document 20-4 at 7]. Stone contends that between March and August of 2017, he received numerous reports that Webb was engaging in disruptive behaviors around the office related to his intent to run for sheriff. [Record Document 20-4 at 9-10]. For example, Stone says that his secretary came to him and requested that Stone "do something" because the "office [was] in chaos" due to "people campaigning" and "people having side-bar conversations." [Record Document 20-4 at 9-10]. This disruptive conduct also included a conversation about the 2019 election that was "not pleasant" between Webb and Williams in March of 2017 that led to Williams avoiding Webb from that point forward. [Record Documents 20-5 at 7 and 24-6 at 23]. Williams states that at this meeting Webb informed him that Webb would be running for sheriff and that he got the "impression" that Webb "was just seeking conflict." [Record Document 20-5 at 7].

According to Stone, by August 10, 2017 the "distention and disruption" at the LPSO surrounding the 2019 election reached the point that he felt he needed to address it. [Record Document 20-4 at 10-11]. On that day, Stone held two departmental meetings to address, among other things, the election. [Record Document 20-4 at 25-26]. Webb was present for the first meeting. [Record Document 24-5 at 27]. At the meetings, Stone discussed the

importance of loyalty to the LPSO and Stone as the elected sheriff, that Stone intended to be in office until at least 2024, and that he felt the office was losing focus. [Record Document 20-4 at 26-27]. He "told everybody, we're professionals here, we've got jobs to do." [Record Document 20-4 at 27].

After the first meeting, Webb approached Stone privately. [Record Document 20-4 at 46]. According to Stone, Webb was "upset," pointed at him, and demanded a meeting. [Record Document 20-4 at 46]. Stone had another meeting at that time, and therefore could not meet with Webb. [Id.] Webb denies that this conversation was "hostile." [Record Document 24-3 at 2]. That night, Webb called Stone after hours. [Record Document 20-3 at 18]. Webb's wife, Jeri Lynn Webb, recorded the phone call using her cellphone. [Record Document 24-4]. As heard on the recording, Webb informed Stone that he believed the full staff meeting was intended to target him. [Record Document 20-3 at 18]. After some back-and-forth regarding whether there were disruptions in the office and who was causing such disruptions, Webb unequivocally told Stone that he would run for sheriff in 2019. [Recording of Phone Call at 3:30-4:40]. At that time, Stone informed Webb that he needed to resign if he was going to persist in his campaign. [Id.] Webb refused to resign and stated that he would continue campaigning in his free time. [Id. at 4:20-4:35].

On the call Webb also argued to Stone that Williams was being allowed to campaign at the office and that Williams was being given preferential treatment by Stone. [Id. at 4:50-5:10]. Stone denied this and said that he would not tolerate disruptions caused by Williams either. [Id. at 5:10-5:40]. Stone admits that at least one individual at the LPSO reported to him that both Webb and Williams were "politicking" at the office. [Record Document 20-4 at 12-13].

Webb did not work again until August 14, 2017. [Record Document 24-3 at 2]. When he arrived that day, Stone gave Webb a letter of termination. [Record Documents 24-3 at 3 and 24-5 at 39-40]. In this letter, Stone explained that he was terminating Webb because Webb's actions before August 10, 2017 and the way Webb interacted with him on August 10, 2017 were insubordinate and in violation of several LPSO policies or procedures. [Record Document 24-5 at 39-40]. Prior to that date Webb had never been disciplined for "'disruptive,' 'hostile,' 'combative[,]' 'insubordinate,' [or] 'offensive'" behavior. [Record Documents 24-3 at 3, 24-3 at 5, 24-5 at 17].

Webb's version of the events leading up to his termination vary significantly from Stone's. According to Webb, he did not directly inform Stone of his intent to run until the August 10, 2017 phone call, although he admits discussing at least a potential candidacy with Stone in March 2017. [Record Document 24-2 at 1, 24-7 at 4-5]. Webb denies that he engaged in any of the disruptive behavior Stone alleges between March and August of 2017. [Record Document 24-3 at 1]. Webb admits that he spoke with a friend who told him there was tension in the office. [Record Document 20-3 at 22-23]. Webb also admits that he spoke with Williams about his intent to run for office in March 2017 but denies that it was a combative interaction. [Record Documents 20-3 at 7 and 24-3 at 1]. Webb does not deny that he discussed his intent to run for sheriff with coworkers, even in their offices, before August 2017 but denies that he did so multiple times per week or in an inappropriate manner. [Record Documents 20-3 at 7-8 and 24-3 at 1].

Webb alleges that he was terminated from the LPSO because he "informed Sheriff Stone that he would qualify for candidacy and intended to run for the office of Sheriff of

Lincoln Parish" in opposition to the candidate Stone supported for the office, Williams. [Record Document 1 at 3]. He filed the instant lawsuit seeking a permanent injunction ordering his reinstatement and damages, including compensatory damages and lost wages. [Record Document 1 at 10].

## LAW AND ANALYSIS

### I.  Plaintiff's Motion to Strike Defendant's Summary Judgment Evidence

The Court will first address Webb's motion to strike Stone's summary judgment evidence [Record Document 25] because the Court's ruling on this motion determines what evidence it can properly consider when ruling on Stone's motion for summary judgment. In his motion, Webb identifies specific lines of Stone's deposition excerpts submitted to support his motion for summary judgment [Record Document 20-4] that Webb alleges are either hearsay, made without personal knowledge, legal conclusions, argument, conclusory statements, mischaracterize Webb's deposition testimony, or were elicited with improperly leading questions. [Record Document 25 at 2-3]. Stone contends that the deposition testimony at issue is admissible for the purpose offered or is not properly characterized by Webb. [Record Document 27].

Federal Rule of Civil Procedure 56(c) governs what evidence is admissible to prove that there is no genuinely disputed fact in a motion for summary judgment. Rule 56(c)(2) provides that a party may object to the Court considering material in the record that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Rule 56 further requires that any affidavits or declarations provided to support or oppose a motion for summary judgment "must be made on personal knowledge [and] set out facts that would

be admissible in evidence . . . ." Fed. R. Civ. P. 56(c)(4). The proponent of the evidence has the burden of demonstrating that the material is in admissible form, or can be in admissible form at trial. Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment.

### a. Hearsay and Personal Knowledge

Webb challenges portions of Stone's deposition spanning seventeen pages of the excerpts Stone submitted with his motion for summary judgment as inadmissible hearsay or as statements made without personal knowledge. [Record Documents 20-4 and 25-1 at 3]. The challenged sections are portions of the deposition where Stone details conversations he had with other people at LPSO about Webb's alleged behavior at LPSO prior to his termination. *See e.g.* Record Document 20-4 at 14 ("[S]he just said, [Webb] is soliciting support here in the office and basically causing a disruption in the office."). Webb asserts that Stone is without any personal knowledge of Webb's actions at the LPSO at that time, and Stone's statements of what other employees told him they witnessed are inadmissible hearsay. [Record Document 25-1 at 2-3]. Stone responds that these statements are not being offered to prove that Webb was in fact acting as described in the hearsay statements, but that they are being offered to prove what information Stone utilized in reaching his decision to terminate Stone. [Record Document 27 at 3].

Webb is correct that Stone's statements would be inadmissible hearsay if offered at trial to prove that Webb acted as those statements describe. Fed. R. Evid. 801. However, Stone asserts that the Court need only consider the deposition testimony at issue for the purpose of knowing what Stone understood the situation to be when he terminated Webb. [Record Document 27 at 3]. The statements, if offered for this purpose, are not hearsay because they

are not offered to prove the truth of the matter asserted. Fed. R. Evid. 801. Therefore, the Court will only consider the statements for the limited purpose Stone states they are offered for: "what information [Stone] had and what he believed" when he terminated Webb. [Record Document 27 at 3]. Webb's motion to strike Stone's deposition as inadmissible hearsay is **DENIED** because Stone has limited the use of such statements to a purpose that is not hearsay.

### b. Legal Conclusion, Argument, or Conclusory Statement

Webb next argues that six pages of Stone's deposition contain incompetent summary judgment evidence because the statements contained therein are speculation, argument, or legal conclusions. [Record Document 25-1 at 4-5]. He contends that Stone lacked any personal knowledge to support allegations against Webb. [Record Document 25-1 at 4].

One set of statements Webb objects to as being impermissible conclusory statements and opinions are statements from Stone such as, "I thought we were all losing focus. I thought the entire office was losing focus, and we've never really had many problems like this at our office in my fifteen years." [Record Document 20-4 at 10]. Similar challenged statements can be found at Record Document 20-4 at 11 lines 1-7 and 17-19 and 20-4 at 24 lines 21-25. In all of these statements Stone is explaining his reasoning for holding department-wide meetings. Webb will certainly be free to challenge the facts that Stone relied on in reaching his conclusions about Webb's behavior and the atmosphere at the LPSO in 2017, but Stone did have some personal knowledge that led him to his conclusion— at least three people came to him reporting what Stone understood to be disruptions in the office. [Record Document 20-4 at 24].

Webb also challenges the same remark found at two different points in the deposition where Stone says some variation of the phrase "I thought we had lost some of our focus . . . ." [Record Document 20-4 at 19, 26]. These statements are again Stone's own impression of what was happening at the LPSO in 2017. Webb will again be able to challenge the accuracy of Stone's impression, but this impression is not made based on mere speculation, as Stone worked at the LPSO and spoke to several people at the office about the situation.

Finally, Webb challenges Stone's statement that he "thought we could get past that and everybody would do their job, get back to work, but it was obvious that I needed to address it." [Record Document 20-4 at 26-27]. This excerpt comes from a section of the deposition where Stone is detailing what he said to his staff during a meeting. [*Id.*] While it is not entirely clear from the written transcript, Stone seems to be describing what he said to his staff. It is also possible that this statement was an interjection of his reasoning for having the meeting in the first place, but either way the statement is not speculation, argument, or a legal conclusion because it is either something Stone actually said or the thoughts motivating his actions. Because none of the challenged statements are truly speculation, argument, or legal conclusion, Webb's motion is **DENIED.**

### c. **Mischaracterization of Webb's Deposition**

Webb requests that the Court strike three portions of Stone's deposition where Webb believes Stone has mischaracterized Webb's deposition testimony. [Record Document 25-1 at 5-6]. Because the Court does not need to consider Stone's characterization of Webb's deposition when the Court has been provided with the deposition itself, the Court will not consider Stone's characterizations and this motion is **DENIED** as moot.

### d. **Responses Elicited Through Improper Questioning**

Finally, Webb argues that several statements in Stone's deposition were elicited through improperly leading questions, and therefore must be stricken because questioning at a deposition must proceed as it would at trial, and the challenged leading questions would not be allowed at trial. [Record Document 25-1 at 6].

The first challenged section was in response to the question, "And explain to me the – how that was done. Was that a calm request for a meeting or did you find that to be confrontational?" [Record Document 20-4 at 46]. Webb's counsel objected to the question, but before Stone's counsel could fully rephrase the question, Stone answered. Stone correctly argues that, to the extent the original question was leading, it is clear that the evidence can be presented in an admissible form at trial by restatement of the question. [Record Document 27 at 5].

Webb challenges the questions "Did you have any statements from Stephen indicating that you didn't have the ability to fire?" and "But did you have certain people within your office indicating that George was being a disruption?" [Record Document 20-4 at 47]. Stone responds that neither of these questions were leading, but that if they were, the evidence can be presented in a form that is admissible at trial. [Record Document 27 at 6]. The Court agrees.

Finally, Webb challenges the response elicited from the question, "If, in your opinion, Sheriff, a deputy tells you he wants a meeting and you're going to do it under his terms, do you feel that to be a disruption?" [Record Document 20-4 at 48-49]. Stone contends that this statement is not leading because Stone's counsel was outlining a hypothetical scenario. [Record

Document 27 at 6]. The Court agrees. Webb's motion is **DENIED.** The Court will now turn to the merits of Stone's motion for summary judgment.

## II.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## III.   Section 1983 Individual Capacity Claims

Webb alleges that Stone is liable in his individual capacity under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights. [Record Document 1]. Stone argues that he did not violate Webb's constitutional rights and, alternatively, that if there were constitutional violations, he is qualifiedly immune from liability. [Record Document 20-1].

Title 42, United States Code, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To assert a claim for damages under this statute, a plaintiff must demonstrate (1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). If a plaintiff establishes a § 1983 violation, the state officer may still be qualifiedly immune from liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To overcome qualified immunity, a plaintiff must first establish that a constitutional violation occurred and, second, that the violation was of a clearly established right. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019). If there is no constitutional violation, the officer is entitled to qualified immunity. *Id.* Thus the Court will first address whether there is competent summary judgment evidence establishing that Stone violated any of Webb's constitutional rights. *Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

a. **Plaintiff's Fourteenth Amendment Claim**

Webb alleges that Stone violated his Fourteenth Amendment due process rights by terminating him from employment without any pre-deprivation process, such as a hearing. [Record Documents 1 at 8 and 24-1 at 23-24]. Stone argues that Webb has no viable due process claim as a matter of law because Webb had no property interest in continued employment, which is an essential element of a due process claim. [Record Document 26 at 4-5].

The Fourteenth Amendment's guarantees of due process procedures only apply to deprivations of liberty or property protected by the Fourteenth Amendment. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972). Therefore, before analyzing if Webb was improperly denied a hearing or some other procedural protections before or shortly after his employment at the LPSO was terminated, the Court must determine whether Webb had a liberty or property interest such that he was entitled to Fourteenth Amendment due process protections.

A public employee's right to continued employment may be a property interest, but this is generally only true for employees for whom the employer's right to terminate without cause has been eliminated. *Stem v. Gomez*, 813 F.3d 205, 210 (5th Cir. 2016). "[A]n employee who is terminable at will generally has no constitutionally-protected property interest." *Id.* To determine if there is a property interest at stake, a court must not look to the constitution, but to "an independent source, such as state law, a contract, or other 'understandings.'" *Id.* at 210-11 (quoting *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988)).

Under Louisiana law, all employees, including governmental employees not protected by civil service statutes, are at-will employees absent a specific contract or agreement to the contrary. *Mederos v. St. Tammany Par. Gov't*, 15-1602 (La. App. 1 Cir. 7/11/16); 199 So. 3d 30, 35. Each elected sheriff creates his or her own department and appoints deputies that technically must be reappointed after each sheriff's term expires. *Moore v. Smith*, 360 F. Supp. 3d 388, 392-93 (E.D. La. 2018). "[A] deputy sheriff has no statutorily prescribed term of office, but merely serves at the pleasure of the sheriff." *Id.* at 393 (quoting *Boyer v. St. Amant*, 364 So.

2d 1338, 1340 (La. App. 4 Cir. 1978)). Consequently, a sheriff's deputy is an at-will employee with no right to continued employment as a matter of state law.

Webb argues that his property interest "was created by, among other things, (i) promise of future employment, a [sic] (ii) payroll deductions, and (iii) other actions, which gave" Webb a "legitimate claim of entitlement to his job." [Record Document 24-1 at 23]. Webb does not cite any evidence in the record to support this assertion, however, and thus the Court finds that Webb has not met the summary judgment standard of demonstrating that there is a genuine issue of fact as to whether he had a statutory right, contractual right, or "understanding" sufficient to create a cognizable property interest in continued employment. Because this Court concludes that Webb did not have a constitutionally protected property interest in continued employment at the LPSO, Webb did not have a constitutional right to pre-termination procedures and the Court need not evaluate the procedures afforded to him. Webb's Fourteenth Amendment due process claim against Stone in his individual and official capacity is **DISMISSED with prejudice**.

### b. Plaintiff's First Amendment Claim

Webb contends that Stone terminated him in violation of his First Amendment rights because the termination was based on "political affiliation and favoritism[.]" [Record Document 24-1 at 13]. Webb further alleges that "this is a case of official retaliation, harassment and intimidation, resulting in violation of Plaintiff's constitutional right to seek political office." [*Id.*] Stone responds that there was no First Amendment violation because Webb's termination was not motivated by any opposition Stone may have had to Webb running for office, but instead by the fact that Webb's behavior was disrupting the workplace.

[Record Documents 20-1 at 4 and 26 at 2]. Stone argues that his right to have a functioning sheriff's department outweighed any constitutional right Webb had to campaign for sheriff. [Record Document 20-1 at 4-5].

As an initial matter, the Court notes that "[s]ummary judgment should be used 'most sparingly in . . . First Amendment case[s] . . . involving delicate constitutional rights, complex fact situations, disputed testimony, and questionable credibilities.'" *Beattie v. Madison Cty. School Dist.*, 254 F.3d 595, 600 (5th Cir. 2001) (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)). To establish a § 1983 claim based on a government employer allegedly terminating an employee in violation of the First Amendment, a plaintiff "must show: (1) they suffered an adverse employment action; (2) the speech at issue involved matters of public concern; (3) [the] Plaintiff['s] interest in the speech outweighs the government's interest in efficiency; and (4) the speech precipitated the adverse employment action." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004). If a plaintiff can establish this, the burden then shifts to the defendant to demonstrate "that 'they would have come to the same conclusion in the absence of the protected conduct.'" *Id.* (quoting *Beattie*, 254 F.3d at 601).

The questions of whether the speech at issue involved a matter of public concern and whether a plaintiff's interest in speech outweighs the government's interest in efficiency are "legal in nature and are for the court to resolve." *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001). A jury should be tasked with determining "any remaining factual disputes as to whether plaintiff's protected speech was a substantial or motivating factor in the adverse employment decision, or whether the employer would have made the same employment decision in the absence of the protected speech." *Id.*

1. <u>Adverse Employment Action</u>

In this case, Webb has established the first element of his claim. Termination from employment is clearly an "adverse employment action" and Stone does not dispute this.

2. <u>Matter of Public Concern</u>

Webb has also established the second element of his claim—that his speech involved a matter of public concern. Stone does not dispute that Webb was engaging in protected speech by announcing his intent to run for office. He instead disputes the third and fourth elements of Webb's claim. [Record Document 20-1 at 4 ("Defendant first contends that Webb's protected speech did not lead to his termination.")]. Thus, the Court will assume that Webb has carried his burden of establishing that he engaged in protected speech.

3. <u>Weighing Plaintiff's Interest in Speech Against the Government's Interest in Efficiency</u>

The Court next turns to the third element—whether Webb's interest in speech outweighs Stone's interest in efficiency in the workplace. Stone and Webb agree that the Court must apply the *McBee-Pickering-Connick* balancing test to answer this question. The *McBee-Pickering-Connick* balancing test is a "sliding scale under which 'public concern' is weighed against disruption: 'a stronger showing of disruption may be necessary if the employee's speech more substantially involves matters of public concern.'" *Click v. Copeland*, 970 F.2d 106, 112 (5th Cir. 1992) (quoting *Matherne v. Wilson*, 851 F.2d 752, 761 (5th Cir. 1988)). Factors to weigh while engaging in this balancing include:

> (1) whether the employee's actions involve "public concerns"; (2) whether "close working relationships" are essential to fulfilling the employee's public responsibilities; (3) the time, place, and manner of the employee's activity; (4) whether the activity can be considered "hostile, abusive, or

insubordinate"; and (5) whether the activity "impairs discipline by superiors or harmony among coworkers.

*Id.* (quoting *Matherne*, 851 F.2d at 760). As previously mentioned, the parties do not dispute that running for sheriff is a matter of public concern, and the Court thus finds that this factor weighs in favor of Webb.

The parties also do not dispute that "close working relationships" are important to being a successful sheriff's deputy. [Record Document 24-2 at 7]. Webb does contend, however, that any lack of close working relationships that may have existed in this case did not actually impact his ability to do his job, as evidenced by Stone's failure to identify a "single incident where Deputy Webb did not do his job or failed to perform his duties." [*Id.*]. Stone did not point the Court to any failure to perform by Webb.

Precedent dictates that once a court determines that close working relationships are essential to the job, the employer's judgment is entitled to "a wide degree of deference" and the employer need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick v. Myers*, 461 U.S. 138, 151-52 (1983). However, in *Kinney v. Weaver*, the Fifth Circuit, sitting en banc, explained that when considering the legitimate government interests at stake, there may be many interests that exist as a matter of law, but the interests "that are at stake in a particular case necessarily depend on the facts of the case." *Kinney v. Weaver*, 367 F.3d 337, 363 (5th Cir. 2004). They cited to *Victor v. McElveen* where a panel of the Circuit found that "a sheriff was unable to show his interests in efficient functioning of the department outweighed a deputy's speech interests, given that it was disputed whether the comment was disruptive." *Id.* (summarizing Victor, 150 F.3d 451, 457 (5th Cir. 1998)). The Court thus looks to facts, about

which there is no genuine dispute, which can establish each of the remaining elements of the balancing test.

In this case, there are disputes of fact relevant to determining whether Webb's behavior was disrupting close working relationships; what the exact time, place, and manner of Webb's activities were; whether his interactions with the sheriff were "hostile, abusive, or insubordinate"; and whether and to what extent his actions "impaired discipline by superiors or harmony among coworkers." For example, Webb has created a genuine dispute as to the extent that his activities actually caused disruption in the workplace, the extent of his conversations with employees at the workplace, how often those conversations occurred, how those conversations compared to the conversations that Williams was having in the workplace, and whether his interactions with individuals at the LPSO can be characterized as hostile or abusive.

Ultimately, running for office is a core matter of public concern. *Wiggins v. Lowndes Cty., Miss.*, 363 F.3d 387, 390 (5th Cir. 2004). This means Stone must make a stronger showing of disruption for the Court to be able to conclude that Stone's right to run an efficient workplace outweighs Webb's right to campaign for sheriff. Based on the limited undisputed evidence before the Court at this time and the light in which this Court must view such evidence, Stone has not made this showing.

### 4. The Speech Precipitated the Adverse Employment Action

Having concluded for purposes of summary judgment that Stone's right to an efficient workplace did not outweigh Webb's right to campaign for office, the Court must proceed to the fourth element of Webb's claim—whether his protected speech led to his termination. To

demonstrate causation between the speech and the adverse employment action, a plaintiff must "demonstrate that his protected conduct was a substantial motivating factor in his discharge." *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991). As the Court previously noted, this is a factual question for a jury to decide. *Branton*, 272 F.3d at 739. Even if it were proper for a court to determine Stone's motivation for terminating Webb, genuine issues of material fact preclude finding that Webb's decision to run for sheriff was not a motivating factor in this case. For example, viewing the evidence in the light most favorable to Webb, Stone was not informed that Webb would definitely be running for sheriff against Williams should Stone elect not to run until four days prior to his termination. Furthermore, Webb has presented evidence that Williams was also discussing running for sheriff around the same time, yet he faced no adverse employment action. The Court finds that Webb has set forth sufficient summary judgment evidence for his allegation that he was terminated in violation of his First Amendment rights.

### 5. Defendant's Conclusion in the Absence of Protected Conduct

Finally, the Court turns to addressing whether Stone has met his burden of showing that the termination would have happened in the absence of the protected conduct. Stone presents no reason besides Webb's alleged disruptive and insubordinate behavior for his termination, and he has therefore failed to carry his burden of demonstrating that the termination would have happened in the absence of the protected conduct.

### c. **Qualified Immunity**

Stone claims that he is qualifiedly immune from liability in his personal capacity for the decision to terminate Webb's employment. [Record Document 20-1 at 8-9]. To overcome

qualified immunity, a plaintiff must first establish that a constitutional violation occurred and, second, that the violation was of a clearly established right. *Cole*, 935 F.3d at 451. A court must consider whether the right was clearly established at the time of the violation such that a "reasonable official would understand that what he is doing violates that right." *Alexander*, 392 F.3d at 147 (quoting *Kinney*, 367 F.3d at 367). Because Webb has successfully alleged a constitutional violation, the Court must now consider whether the right of an employee not to be terminated from public employment for campaigning to replace a governmental employer's preferred successor,[2] was clearly established such that a reasonable officer would understand that his actions violated the constitution.

Stone argues that, if he was found to have violated a constitutional right, that right was not clearly established by virtue of the fact that the constitutional violation at issue requires engaging in a balancing test. [Record Document 20-1 at 9]. To support this argument, Stone cites *Noyola v. Texas Department of Human Resources.*, 846 F.2d 1021 (5th Cir. 1988). In *Noyola*, the Fifth Circuit stated that "[t]here will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights." *Noyola*, 846 F.2d at 1025. In *Kinney v. Weaver*, however, the Fifth Circuit held that while it was sensitive to the concerns that the *Noyola* court had about the ability to predict the outcome of a balancing test, the illegality of certain behavior may be "sufficiently clear that [the official] can fairly be said to have been on notice of the impropriety of their actions."

---

[2] The Court is not holding that Williams was Stone's preferred candidate to replace him or that Stone had definitively decided not to run for office at the time of Webb's termination. The Court phrases the inquiry this way to clarify that Webb alleges he was terminated for campaigning against Williams, not Stone himself.

*Kinney*, 367 F.3d 371-72. The court noted that denial of qualified immunity is most often appropriate when "the balance of cognizable interests weighs so starkly in the plaintiff's favor." *Id.* The court continued, stating that "[t]his means that summary judgment must sometimes be denied in *Pickering* cases because of genuine factual disputes concerning whether admittedly legally important government interests are implicated on a given record." *Id.* Importantly, the court held that once the genuine disputes of material fact are resolved, the government officials may be entitled to qualified immunity. *Id.*

Stone has provided more evidence to support his assertions than the government employer in *Kinney*, but the many remaining genuine issues of material fact relevant to the *McBee-Pickering-Connick* balancing test prevent the Court from concluding whether the balancing test was a close call, like the *Noyola* court envisioned, or if the balance was so heavily weighted in Webb's favor that Stone should have been aware of the impropriety of his actions.

Furthermore, when a government employer's intent or reasons for acting are an essential element of a claim, the Fifth Circuit "treat[s] factual disputes over intent just like any other factual dispute that can justify a denial of qualified immunity." *Kinney*, 367 F.3d at 373. As previously explained, Webb has demonstrated that genuine issues of material fact exist as to whether or not Stone terminated Webb's employment as retaliation for his decision to run for sheriff. As Stone admitted in his deposition, terminating Webb for his decision to run for office would violate his First Amendment rights. [Record Document 20-3 at 17]. Thus, granting Stone qualified immunity would be improper when genuine disputes of material fact remain as to his motivations in terminating Webb. Stone's motion for summary judgment as to the First Amendment claims in his individual capacity is **DENIED**.

## IV.  Section 1983 Official Capacity Claims for First Amendment Violations

Webb alleges that Stone is liable in his official capacity under § 1983 for violating his First Amendment rights. [Record Document 1]. With the exception of arguing that Stone is entitled to qualified immunity in his individual capacity, [Record Document 20-1 at 10], Stone fails to differentiate whether his arguments on the merits of Webb's claim apply equally to Stone in his official and individual capacity. Absent legal argument differentiating the standard applied to Stone in his individual and official capacities, the Court **DENIES** Stone's motion for summary judgment as to the First Amendment claim in his official capacity.

## V.  Plaintiff's State Law Claims

Webb alleges violations of the Louisiana State Constitution. [Record Document 1 at 9-10]. Defendant requests that this Court dismiss "all claims" made against Stone with prejudice. [Record Document 20 at 1]. Stone's briefing on the motion for summary judgment, however, wholly fails to address the state constitutional claims.[3] [Record Documents 20-1 and 26]. Because the movant carries the burden of identifying for the Court that there is no genuine dispute of material fact and that he or she is entitled to judgment as a matter of law, Stone's summary judgment motion must be **DENIED** as to Webb's state constitutional claims. *Celotex Corp.*, 477 U.S. at 323.

---

[3] The Court notes that one of Webb's alleged state law violations is of La. Const. Art. I, § 2, which mirrors language in the Fourteenth Amendment to the United States Constitution. [Record Document 1 at 9-10]. Stone has not provided the Court with any law or argument demonstrating that the Louisiana Constitution's due process clause has been interpreted to follow the federal constitutional standard, however, and therefore, the Court cannot conclude as a matter of law that Webb's state law due process claim must be dismissed.

## CONCLUSION

For the reasons discussed herein, Plaintiff's motion to strike Defendant's summary judgment evidence [Record Document 25] is **DENIED.** Defendant's motion for summary judgment [Record Document 20] is **GRANTED in part** and **DENIED in part**. The motion is granted as to Plaintiff's Fourteenth Amendment due process claim against Defendant in his individual and official capacity. Defendant's motion is denied as to all other claims: Plaintiff's First Amendment claim against Defendant in his individual capacity, Plaintiff's First Amendment claim against Defendant in his official capacity, and Plaintiff's claims against Defendant for violations of Article I, Sections 2 and 8 of the Louisiana State Constitution.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 21st day of November, 2019.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE